United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAMUEL MAY,

    Plaintiff,

  v.

AMGEN, INC.,

    Defendant.

No. C 12-01367 WHA

**ORDER GRANTING DEFENDANT'S REQUEST TO DENY PLAINTIFF'S PETITION TO VACATE OR MODIFY ARBITRAL AWARD**

### INTRODUCTION

In this employment case, plaintiff moves to vacate or modify an arbitral award under 9 U.S.C. 10(a)(1)(2), 11(b)(c). Defendant moves to dismiss plaintiff's petition or, alternatively, to stay proceedings, or, alternatively, to deny plaintiff's petition. For the reasons set forth below, defendant's request to deny plaintiff's petition is **GRANTED**.

### STATEMENT

Pro se plaintiff Samuel May worked for defendant Amgen, Inc. as a computer validation specialist in Colorado from March 2002 through his resignation in June 2006. Beginning in 2004, plaintiff pursued other job opportunities at Amgen and applied for various positions within the company. In 2005, plaintiff pursued job opportunities outside of Amgen and applied for a position with a California-based company called Nektar Therapeutics. Plaintiff was offered a position with Nektar and voluntarily signed an employment agreement with the company in May 2006 (Milianti Decl. ¶¶ 5–7).

On May 31, 2006, Amgen's hiring manager, Chandra Sekhar, verbally extended an offer to plaintiff for a position with Amgen in Thousand Oaks, California. Plaintiff viewed this position as a "very good fit for [him] because [it was] right along . . . [his] desired career plan," and at least a lateral move for him. On June 2, 2006, the morning after his background check at Nektar cleared, plaintiff resigned his position at Amgen. Six months after plaintiff accepted the job at Nektar, he was discharged from that position (Milianti Decl. ¶¶ 8–12).

In April 2007, plaintiff sued Amgen in an eight-count complaint in California state court. Less than a week after being served with the complaint, on August 21, 2007, defendant sent a letter to plaintiff's then-counsel advising him that plaintiff had signed an arbitration agreement that covered all claims asserted by plaintiff in the complaint. Plaintiff voluntarily dismissed the lawsuit on October 22, 2007 (May Decl. ¶¶ 32–34).

The arbitration agreement provided that "[t]he arbitration shall take place in or near the city in which I am or was last employed by the Company." Plaintiff was last employed by Amgen in Longmont, Colorado and, thus, the arbitration was required to take place in or near that city (Milianti Decl. ¶¶ 15, 26, Agreement at App. A, ¶ 6.1). In April 2008, plaintiff filed a demand for arbitration with JAMS in Denver. The arbitration demand asserted the same eight claims from the August 21 complaint (Milianti Decl. ¶ 15).

In the arbitration proceeding, plaintiff claimed that he had reported (what he said were) compliance violations, and his supervisors then allegedly made his working conditions so intolerable that he felt forced to resign. Defendant denied the allegations and asserted, among other things, that plaintiff had voluntarily resigned his employment.

In May 2008, defendant moved to dismiss the second, third, fourth, fifth, and eighth counts in plaintiff's statement of claims. After full briefing by both parties, the arbitrator dismissed these claims.

In January 2009, plaintiff retained new counsel, which caused delays. Plaintiff's second set of attorneys "suggested that [plaintiff] retain different counsel because they were unable to properly represent [him]" (May Decl. ¶ 37). In April 2009, plaintiff terminated his relationship

with his second set of attorneys, which caused further delays (Milianti Decl. ¶ 18). Plaintiff was pro se for the remainder of the proceeding.

In October 2010, defendant moved for summary judgment on the remaining counts. After full briefing and oral argument, the arbitrator denied defendant's motion with respect to plaintiff's claim for constructive discharge in violation of public policy, and granted it with respect to plaintiff's intentional infliction of emotional distress and negligent infliction of emotional distress claims (Milianti Decl. ¶ 21).

The parties began a hearing on plaintiff's claim for constructive discharge in violation of public policy in July 2011. The parties examined ten witnesses over the course of three days, including all of plaintiff's previous direct supervisors. During the three-day hearing, defendant denied plaintiff's allegations of constructive discharge in violation of public policy and presented evidence demonstrating that plaintiff had: begun looking for another job at least ten months before he raised what he said were compliance violations; accepted a more-lucrative job with Nektar before resigning; declined what he characterized as a "very good" opportunity to transfer to another job within Amgen; and written to Amgen providing two-weeks advance notice of his resignation (Milianti Decl. ¶¶ 22–23).

On October 14, 2011, the arbitrator issued her award ruling against plaintiff May and in favor of defendant Amgen. She wrote:

> Claimant has failed to prove that he had "no other choice but to quit" his job at Amgen. The evidence clearly establishes that Claimant had another alternative to resignation: he could have accepted Sekhar's [job] offer [at Amgen] in Thousand Oaks. The evidence is undisputed that two days after he received a verbal offer from Sekhar, Claimant informed Sekhar that he had accepted another job and would "not be pursing this opportunity." When Claimant resigned on June 16, 2006 to work for Nektar, Claimant admits that Sekhar's job was still open.
>
> The evidence further establishes that Claimant began to look for other jobs as early as January 2005 — well before he raised any compliance concerns in September 2006. Claimant admits that he was looking for other positions because of corporate restructuring.
>
> The reasons that Claimant gave for his resignation are also inconsistent with his claim. The emails sent to Jennings [a recruiter for Nektar], Butters [plaintiff's immediate supervisor] and Sekhar in the weeks and days before his resignation show that Claimant's decision to resign was voluntary. Claimant also

3

>   provided advance notice of his resignation in his June 2 email to Butters, stating that he had "made this difficult decision to pursue other career opportunities which will greatly benefit me and my family moving forward" and that he would "cherish [his] experiences" at Amgen.

(Milianti Decl. ¶ 27, Arbitration Award at 9–10).

The arbitrator also found that plaintiff's supervisors had not made his working conditions objectively intolerable; defendant had not directed plaintiff to perform an illegal act; and "[t]here was no evidence presented that the conduct of Amgen employees or supervisors violated any public policy" or that Amgen retaliated against plaintiff in any way (Milianti Decl. ¶ 28, Arbitration Award at 11–13).

On February 24, 2012, defendant filed a motion to confirm the arbitration award in Colorado state court. Defendant personally served plaintiff with its motion to confirm on February 28, 2012. Plaintiff declares that on March 6, 2012, after having received a notice of filing of a motion to confirm the arbitration award, he "submitted this instant petition according to the rules of the 9th Circuit Court in San Francisco, California to the clerk of the court, and Amgen's lead counsel Peter Milianti and served a notice seeking vacatur under FAA's §10 §11, and §12" (May Decl. ¶ 50). The court of appeals rejected this petition because the court lacked jurisdiction to review an arbitration award in the first instance. Plaintiff did not file a response to defendant's motion to confirm, and instead filed a petition and notice to vacate or modify the arbitral award pursuant to 9 U.S.C. 10(a)(1)(2), 11(b)(c) with this Court on March 16, 2012 (Milianti Decl. ¶ 31).

On March 23, 2012, the Colorado state court granted defendant's motion to confirm and entered a judgment and order confirming the arbitration award. On March 28, 2012, plaintiff filed a document entitled, "Motion and Order To Set Aside Default Judgment" with the Colorado state court. On May 7, 3012, the Colorado state court denied plaintiff's motion to set aside judgment and ruled as follows:

>   The Federal Arbitration Act, which the parties agree governs this award, authorizes a party to an arbitration agreement to apply to the district court for an order vacating the arbitration award after entry of the award. However, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or

4

> delivered." 9 U.S.C. § 12. A party's failure to move to vacate an arbitration award with[in] the statutorily proscribed three month period is fatal and prevents the movant from challenging the arbitration award. Here the arbitrator issued the final arbitration award on December 9, 2011 after denying [plaintiff May's] motion for reconsideration. On March 15, 2012, [plaintiff May] sent [Amgen's counsel] an email providing notice of his "Motion to vacate filed with the U.S. District Court instead of the 9th Circuit." [Plaintiff May] therefore did not take action to provide notice to vacate the arbitration award within the statutorily mandated period.

(Milianti Decl. ¶ 34, Exh. 13).

Plaintiff moves to vacate or modify the arbitral award under 9 U.S.C. 10(a)(1)(2), 11(b)(c). Defendant moves to dismiss plaintiff's petition, or, alternatively, to stay proceedings, or, alternatively, to deny plaintiff's petition.

It is disturbing that plaintiff has fled from the Colorado state court and come here seeking yet another opinion on his case. A strong abstention argument is made but this order will go ahead and decide the merits in order to bring this case to an end.

## ANALYSIS

### 1. TIMELINESS.

Under 9 U.S.C. 12, "notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."

Defendant argues that plaintiff's alleged failure to act within the limitations period set forth in the act for seeking judicial modification of an arbitration award should bar the present action. The final arbitration award was issued on December 9, 2011. On March 15, 2012, seven days after the limitations period had expired, plaintiff sent defendant's counsel his petition by email. Thus, defendant argues, plaintiff did not provide notice to vacate or modify the award within the statutorily mandated period (Br. 8).

Plaintiff avers that on March 6, 2012, after having received a notice of filing of a motion to confirm the arbitration award, he "submitted this instant petition according to the rules of the 9th Circuit Court in San Francisco, California to the clerk of the court, and Amgen's lead counsel Peter Milianti and served a notice seeking vacatur under FAA's §10 §11, and §12" (May Decl. ¶ 50).

5

This order finds that plaintiff did not give proper notice of his petition to vacate or modify the arbitration award. Plaintiff gave the wrong notice. Instead of filing this civil action within the three-months limitations period, plaintiff submitted to the court of appeals a petition seeking permission to file a motion to vacate or modify the arbitration award. Nonetheless, because plaintiff is pro se, and as a concession to the shortness of life, this Court will assume for the sake of argument that this civil action is timely and proceed to decide the case on the merits.

**2. MERITS.**

Pursuant to 9 U.S.C. 11(b), a federal court may modify or correct an arbitration award upon the application of any party to the arbitration where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter. A court may also modify or correct an arbitration award where the award is imperfect in matter of form not affecting the merits of the controversy. 9 U.S.C. 11(c).

Contrary to plaintiff's assumption, an arbitrator's award may not be "appealed" to the district court in the same way that a district court decision can be appealed to the court of appeals. An arbitration award is immune from interference from the district court, unless it falls within the narrowly prescribed grounds defined in the act. Under the act, a district court may vacate an arbitration award only under a limited set of circumstances: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. 10(a).

In order to obtain relief vacating a decision of an arbitrator, a plaintiff must clear a high hurdle, and it is not enough for the party to show that the arbitrator committed an error, or even a serious error. *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S.Ct. 1758, 1767 (2010). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify judicial

6

1  review of an arbitral award" under the act. *Bosack v. Soward*, 586 F.2d 1096, 1102 (9th Cir.
2  2009).

3    Plaintiff bases his petition on four theories:  (1) defendant obtained the award by undue
4  means; (2) the arbitrator exhibited evident partiality towards defendant by undue delays; (3) the
5  arbitrator rejected material evidence; and (4) the arbitrator exceeded her powers by not deciding
6  on damages.  This order finds that plaintiff fails to meet the high standard for overturning an
7  arbitration award.

8    *First*, plaintiff does not demonstrate that defendant obtained the arbitration award by
9  undue means.  Plaintiff argues that defendant "produced (previously undisclosed) a pre-dispute
10  mandatory arbitration contract of adhesion."  Plaintiff further argues that defendant forced him
11  into arbitration and lured him into self-representation. Plaintiff states that "[d]emands to remove
12  his suit to arbitration was coerced, deceptive, and enforced illegally, therefore, final award
13  obtained by Amgen without reconciling Plaintiff's damages is *illegal* or *immoral* breaching
14  the agreement willfully" (Pet. 4–5).  Plaintiff fails to provide any evidence to support these
15  assertions.  The documents that plaintiff appends as exhibits to his petition simply demonstrate
16  that plaintiff signed the arbitration agreement in March 2002 and that, after he improperly filed
17  a lawsuit against defendant in California state court, defendant sent a letter to plaintiff's attorney
18  requesting that plaintiff dismiss the lawsuit and bring his claims in arbitration.  It is unclear from
19  these documents how "demands to remove [plaintiff's] suit to arbitration was coerced, deceptive,
20  and enforced illegally."  Based on the evidence, defendant merely insisted on enforcing its
21  arbitration contract and does not appear to have acted unlawfully or deceptively.

22    *Second*, plaintiff fails to establish that the arbitrator exhibited partiality towards
23  defendant.  Plaintiff claims partiality because the arbitrator allegedly "postponed" the arbitration
24  hearing "in Amgen's favor for over 4.5 years," "ignored [plaintiff's] repeated requests to move
25  up the hearing date," and then scheduled the arbitration for dates "when several of [plaintiff's]
26  witnesses were unavailable and were improperly notified" (Pet. 5–6).

27    The record shows that the delay in the proceedings actually occurred at plaintiff's own
28  behest.  Plaintiff improperly filed his lawsuit in California state court in April 2007, after which

7

defendant requested that plaintiff dismiss his lawsuit and bring his claims in arbitration (May Decl. ¶¶ 32–34). Plaintiff did not commence arbitration proceedings until several months later (Milianti Decl. ¶ 15, Exh. 3). In January 2009, plaintiff retained new counsel, which caused delays (May Decl. ¶ 35). In April 2009, plaintiff terminated his relationship with his second set of attorneys, which caused further delays (*id*. ¶ 37). Moreover, according to the scheduling order, plaintiff requested and was granted a total of one full year of extensions of time to complete discovery (Milianti Decl. ¶¶ 19–20, Exh. 7). Plaintiff's argument that defendant caused delay in the arbitration and that this delay reflects the arbitrator's partiality towards defendant is unreasonable. Plaintiff fails to explain why any delay in the proceedings translates to prejudice against one side. It is plaintiff's burden to show that the arbitrator exhibited partiality, and he has failed to meet this burden. Unfortunately, arbitrations often drag on for years and are not always the speedy and efficient forum they were once thought to be, but in this case the delay is largely plaintiff's own fault.

      Plaintiff further argues that the fact that the arbitrator denied defendant's motion for directed verdict at the end of the hearing, yet allowed the parties to file post-hearing briefs, is evidence of her partiality (Pet. 5–6). The fact that the arbitrator denied defendant's motion for directed verdict, however, actually indicates that she likely was *not* partial toward defendant since she wanted to make her decision after hearing written argument. Moreover, the record shows that the parties agreed to file post-arbitration briefs instead of making closing arguments, under the terms of the arbitration agreement (Milianti Decl. ¶ 26, Agreement at App. A, ¶ 6.5) ("Either party, upon request, at the close of the hearing, shall be given leave to file a post-hearing brief").

      Plaintiff next argues that he was not permitted to participate in the selection of the arbitrator. Based on evidence presented by defendant, however, plaintiff's counsel and defendant's counsel both received a strike list containing prospective arbitrators from the case manager simultaneously. There is no evidence that plaintiff objected to Elaine Wohlner being appointed arbitrator, before or after she was selected (Milianti Decl. ¶ 16, Exh. 3). Plaintiff's contention is wrong on the facts.

1    Finally, plaintiff argues that it took five months for the arbitrator to issue a final
2 arbitration award after the hearing ended. This claim is contradicted by the record. The hearing
3 ended on July 21, 2011, and the parties agreed to file post-hearing briefs by September 15.
4 The arbitrator issued an award on October 14. Plaintiff then moved for reconsideration on
5 November 3, and defendant responded on November 23. The arbitrator denied reconsideration
6 and issued her final arbitration award just sixteen days later, on December 9 (Milianti Decl.
7 ¶¶ 26–29).

8    *Third*, plaintiff fails to demonstrate that the arbitrator refused to hear material evidence.
9 Plaintiff argues that the arbitrator did not consider some evidence regarding his alleged damages
10 and that the arbitrator rejected plaintiff's "medical evidence" regarding his alleged damages.
11 Plaintiff further argues that because the hearing was held in Colorado, he was unable to present
12 "key witnesses," since he lived in California "at all times relevant to the petition" (Pet. 7).

13    Plaintiff fails to offer *any* evidence to support these arguments, and, based on the record,
14 the arbitrator actually did consider all material evidence. *Plaintiff, represented by counsel,*
15 *initiated the arbitration proceeding in Colorado.* The arbitration hearing was held in Colorado
16 because plaintiff was last employed by Amgen in Colorado, and the arbitration agreement
17 expressly provided that "[t]he arbitration shall take place in or near the city in which I am or
18 was last employed by the Company" (Milianti Decl. ¶¶ 15, 26, Agreement at App. A, ¶ 6.1).

19    *The arbitrator allowed plaintiff to examine witnesses by telephone, but plaintiff decided*
20 *not to do this.* Plaintiff also had the option of taking evidence-preservation depositions of any
21 witness, but he chose not to do so. Additionally, the arbitrator offered to continue the arbitration
22 hearing to a fourth day, but plaintiff declined (Milianti Decl. ¶ 24). The record indicates that
23 the arbitrator also offered plaintiff several opportunities to arrange for his health-care provider
24 to testify, even by telephone. After plaintiff's health-care provider did not testify, the arbitrator
25 allowed plaintiff to make an offer of proof of his alleged non-monetary damages. Plaintiff made
26 this offer, and the arbitrator stated on the record that she would treat that as evidence and take it
27 into consideration. Plaintiff offers no evidence to suggest that the arbitrator rejected his offer of
28

1   proof or chose not to consider his testimony regarding his damages (Milianti Decl. ¶ 25, Exh. 1).
2   Plaintiff's argument is most unfair to the arbitrator and is downright false.

3        *Fourth*, plaintiff provides no evidence to demonstrate that the arbitration award exhibited
4   a manifest disregard of the law or was completely irrational.

5        Plaintiff argues that the arbitrator misapplied the law, but offers no evidence to support
6   this assertion. He fails to point to evidence in the record that would show that the arbitrator was
7   aware of the law and intentionally disregarded it. Plaintiff's argument that the arbitrator did not
8   mention 18 U.S.C. 1001 as a basis of his public-policy claim has no merit. Plaintiff did not refer
9   to 1001 during the three-day arbitration hearing, only in his post-hearing brief, and he offers no
10  evidence that the arbitrator did not consider it when she stated that "[t]here was no evidence
11  presented that the conduct of Amgen employees or supervisors violated any public policy"
12  (Milianti Decl. ¶ 28, Arbitration Award at 13).

13       Plaintiff argues that the arbitrator exceeded her powers by "not deciding" his defamation
14  claim and his claims for damages and his request for reinstatement (Pet. 7–8). The actual facts
15  indicate otherwise. The arbitrator did not consider plaintiff's claim for defamation because
16  that claim was dismissed three years earlier (Milianti Decl. ¶ 17). Plaintiff's arbitration demand
17  included a defamation claim, and defendant moved to dismiss this claim. In September 2008,
18  after full briefing by both parties, the arbitrator dismissed the defamation claim. When plaintiff
19  amended his statement of claims, he did not allege a new claim for defamation (*id*. ¶ 17 n.2).
20  Further, because plaintiff failed to prove liability, his claim for damages and his request for
21  reinstatement were moot (*id*. ¶ 25, Exh. 1).

22       Plaintiff does not provide any evidence to show that the award was irrational.
23  An arbitration award is "completely irrational" only where the arbitration decision "fails to
24  draw its essence from the agreement." *Lagstein v. Certain Underwriters at Lloyd's*, 607 F.3d
25  634 (9th Cir. 2010). Courts do not consider whether the arbitrator's finding is correct.
26  Plaintiff fails to cite to the record to support his claims that he has new evidence that defendant
27  blacklisted him from other jobs in the industry, and that seven of defendant's witnesses testified
28  that defendant concealed compliance violations. Plaintiff's arguments that the award should be

10

vacated or modified because it has caused him "significant injustice" and that it "violates public policy" are not proper grounds for vacating an arbitration award under the act.

### CONCLUSION

This is a case in which both sides received a fair hearing and the losing side simply refuses to accept the outcome.

For the foregoing reasons, defendant's request to deny plaintiff's petition to vacate or modify the arbitral award is **GRANTED**.  The next step for plaintiff is to file a timely notice of appeal and perfect his appeal to the United States Court of Appeals for the Ninth Circuit.

**IT IS SO ORDERED.**

Dated: June 14, 2012.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE